J-A03025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WESLEY TSE | |
| Appellant | No. 418 MDA 2016 |

Appeal from the Judgment of Sentence entered February 23, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No: CP-14-CR-0001764-2014

BEFORE:  LAZARUS, STABILE, and DUBOW, JJ.

MEMORANDUM BY STABILE, J.:                         **FILED MAY 23, 2017**

Appellant, Wesley Tse, appeals from the judgment of sentence the Court of Common Pleas of Centre County entered February 23, 2016.  Upon review, we affirm.

The trial court, sitting as fact-finder, made the following findings of fact:

1. Officer Hanes [of the State College Police Department] conducted an investigation into James Tewell for the alleged selling of marijuana, and possibly cocaine and molly, based on information he received from a confidential informant.
2. Mr. Tewell resided in State College, Pennsylvania at 925 Bellaire Avenue, Apartment Y213.
3. On September 12th, 18th, and 29th of 2014[,] the confidential informant made controlled buys of marijuana from Mr. Tewell at 925 Bellaire Avenue, Apartment Y213.
4. On September 29, 2014, Officer Hanes applied for and was granted a sealed search warrant for 925 Bellaire Avenue, Apartment Y213.  The search warrant was issued by the

Honorable Bradley P. Lunsford on September 29th, 2014[,] at 3:30 PM.

5. In the Application for Search Warrant and Authorization[,] the daytime search box[, which] states "[t]his Warrant shall be served as soon as practicable and shall be served only between the hours of 6 AM to 10 PM but in no event later than[,]" was checked. Below the unchecked nighttime search box, Judge Lunsford put the expiration time of the search warrant as October 1, 2014[,] at 3:30 PM. The expiration time applies to whichever box is checked, the daytime or nighttime box. Instantly, the daytime box was checked and this was a daytime search warrant, not a nighttime warrant.

6. The Search Warrant was issued for the entire apartment at 925 Bellaire Avenue, Apartment Y213, State College, Centre County, Pennsylvania.

7. Although it appears the residents of Apartment Y213 have individual bedrooms, Officer Hanes testified, as is the practice of the Drug Task Force, he obtained a search warrant for the entire residence due to the fact illegal drug contraband can be hidden anywhere in the apartment. [Officer] Hanes testified he has had other search warrants where items have been hidden in other people's bedrooms and drug transactions have been held in other people's bedrooms, as well as common areas. Officer Hanes based his opinion on being involved in over one hundred drug cases.

8. On September 30th, 2014[,] at approximately 7:27 AM, the search warrant was executed at 925 Bellaire Avenue, Apartment Y213, State College, Pennsylvania.

9. Upon entry, for safety purposes, the officers secured the present individuals, including [Appellant], by handcuffing them and taking them to a common area of the apartment to be watched over by an officer. Once the location was secure[,] they collected biographical information of the present individuals.

10. The officers searched the bedrooms, including [Appellant]'s room and the common areas.

11. During the interview of Mr. Tewell, he disclosed [Appellant] was his source of marijuana and the marijuana was located in [Appellant]'s room in the closet.

12. A search of [Appellant]'s room yielded approximately 11.45 pounds of marijuana, approximately 60 grams of molly,

about 17 grams of mushrooms, about 14 grams of cocaine, $28,000 of U.S. currency, and drug paraphernalia.

13. During the search of [Appellant]'s room the officers seized items from a safe in [Appellant]'s closet. Upon locating the safe, the officers noticed the safe door was ajar. Due to the safe being ajar, officers did not need a code or key to access the safe.

14. During the search of [Appellant]'s room the officers seized as evidence an iPhone as belonging to [Appellant]. The iPhone was searched later pursuant to another search warrant.

15. Officers have the forensic utilities to bypass a phone's passcode and extract data from a phone. Also, law enforcement can send a seized phone to a manufacturer or cell phone provider to assist in unlocking and accessing a phone.

16. [Appellant] was handcuffed and [**mirandized**][1] and did not give any statements.

17. Officer Joshua Martin did ask [Appellant] for his passcode[,] explaining that law enforcement would be able to access the data on the phone by sending the phone to the manufacturer or by conducting an extraction process. Officer Martin further explained that if [Appellant] provided the passcode his phone would most likely be returned to him sooner. [Appellant] then provided Officer Martin with the passcode to the phone.

Trial Court Opinion, 7/10/15, at 2-4.

Appellant was charged with three counts of possession with intent to distribute, one count of criminal conspiracy, three counts of possession of controlled substances, and one count of possession of drug paraphernalia. After the matter was bound over to the trial court, Appellant filed a motion to suppress and a motion to dismiss, challenging the search and seizures of Appellant's bedroom. The trial court, following a hearing, denied both

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

motions. Subsequently, Appellant filed a motion seeking to compel discovery, including disclosure of the Commonwealth's informant's identity. Likewise, the trial court denied this motion. Upon learning of the second extraction, Appellant filed another motion to suppress any evidence produced by the second extraction. Following a hearing, the trial court denied the motion to suppress.

A stipulated non-jury trial followed on November 30, 2015, after which the trial court found Appellant guilty of all charges, sentencing him to 11½ to 23 months' incarceration, followed by 3 years' probation. This appeal followed.

Appellant first argues the warrant allowing for a search of his apartment was defective and/or overbroad because (i) it did not specify the room to be searched, and (ii) it allowed nighttime search of the same without adequate support for it.

Regarding ground (i), Appellant relies on *In the Interest of Wilks*, 613 A.2d 577 (Pa. Super. 1992), for the proposition that a "warrant directing a search of more than one living unit is valid only if there is a probable cause that all are being used for the unlawful purposes involved." Appellant's Brief at 14 (quoting *Wilks*, 613 A.2d at 579). This argument was recently rejected by this Court in *Commonwealth v. Korn*, 139 A.3d 249 (Pa. Super. 2016):

> When discussing relevant case law in *Wilks,* this Court cited to our Supreme Court's previous decision in *Commonwealth v.*

> ***Carlisle***, [534 A.2d 469, 471 (Pa. 1987)], for the proposition that "[a] search warrant directed against an apartment house, or other multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the *particular room* or subunit to be searched with sufficient definiteness to preclude a search of other units." ***Wilks***, 613 A.2d at 579 (emphasis added). This reference to a particular room must, however, be read in context. In ***Carlisle***, our Supreme Court cited with approval this Court's quoting the general requirement of particularity found in 68 Am.Jur.2d *Searches and Seizures* § 77 (1973). ***Carlisle***, 534 A.2d at 471. Despite the mention of "room" in that treatise, our Supreme Court in ***Carlisle*** held the search warrant at issue described the premises to be searched with sufficient particularity even though the affidavit that accompanied the warrant designated only the specific ***apartment*** to be searched. ***See Carlisle***, 534 A.2d at 471–72 [] (explaining that [] the "evil to be prevented is the search of other apartments where there is no legal basis for police intrusion.")

***Id.*** at 255 (emphasis in original) (footnote omitted). Thus, ***Wilks*** cannot be read to preclude the search of all rooms inside a single apartment if there is probable cause to believe contraband is located in any room of the apartment.

> In fact, Article 1, Section 8 of the Pennsylvania Constitution has been held not to preclude a search of the entire residence where there is probable cause to believe that contraband is located within any particular room of a single living unit. In ***Commonwealth v. Waltson***, [724 A.2d 289 (Pa. 1998)], the Pennsylvania State Police responded to a domestic dispute and were informed by the defendant's alleged girlfriend that the defendant was growing marijuana in the basement. Thereafter, a search warrant was issued, which described the premises to be searched by house number. Upon searching the entire residence, the police found not only ten marijuana plants growing in one room of the basement, but also found other drugs and drug paraphernalia throughout the rest of the house.
>
> Following his conviction on various drug charges, the defendant filed a timely appeal to this Court, in which he challenged the trial court's denial of his suppression motion. We rejected his

challenge to the trial court's suppression ruling and affirmed the defendant's judgment of sentence. ***See Commonwealth v. Waltson***, 703 A.2d 518, 521 (Pa. Super. 1997) (concluding that "when there is probable cause to believe criminal activity is afoot in one room of a single unit household, a warrant to search the entire unit is not overbroad.") Our Supreme Court granted the defendant's petition for allowance of appeal "in order to address whether a search warrant is overbroad where it authorizes a search of an entire residence, where probable cause underlying the warrant relates to only a particular room of the house." ***Waltson***, 724 A.2d at 290–91.

The high court held that, "where there is probable cause to believe that contraband is located within a particular room of a single unit house, Article 1, Section 8 does not preclude a search of the entire residence." ***Id.*** at 290. In doing so, our Supreme Court rejected the defendant's contention that the "Pennsylvania Constitution's enhanced privacy rights limit the scope of a lawful search of a single unit residence more than the Fourth Amendment." ***Id***. at 291. The ***Waltson*** court then concluded the following:

> [W]here a search warrant adequately describes the place to be searched and the items to be seized the scope of the search "extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted."

***Id.*** at 292 (quoting ***Commonwealth v. Reese***, 520 Pa. 29, 549 A.2d 909, 911 (1988)) (footnote omitted).

***Korn***, 139 A.3d at 255-56.

Thus, to the extent Appellant relies on ***Wilks*** to challenge the validity of the warrant, such reliance is misplaced. ***See Korn***, 139 A.3d at 255-56. In ***Waltson*** our Supreme Court specifically stated that when officers can articulate probable cause to search one room in a single unit, as they did here, ***see*** Trial Court Opinion, 7/10/16, at 2-4, a search warrant allowing for

- 6 -

the search of the entire unit is not overbroad. *See Waltson*, 724 A.2d at 290–92.

Next, Appellant argues the warrant is defective because it allowed nighttime search despite the supporting affidavit of probable cause not providing any reason for that provision. A review of the record belies Appellant's claim. The issuing authority authorized a daytime search by checking the daytime box option for the execution of the search. Appellant's failure to acknowledge this much is confusing.

Addressing Appellant's contention that the entry of the expiration time for the search in the nighttime search option box turned the instant daytime search into a nighttime search, the trial court noted that "[t]he expiration time applies to whichever box is checked, the daytime or nighttime box. Instantly, the daytime box was checked and this was a daytime search warrant, not a nighttime warrant." Trial Court Opinion, 7/10/16, at 2. In light of the foregoing, we conclude the claim is meritless.

Appellant next argues the trial court erred in not suppressing the statement proffered by Appellant following a violation of his *Miranda* rights. Specifically, Appellant argues that after he invoked his right to remain silent, the officer's request for Appellant to disclose the phone password constituted a custodial interrogation in violation of *Miranda*, which should result in the suppression of the statement, and any other evidence obtained from that violation. We disagree.

- 7 -

We need not determine whether the officer's request for the cell phone password amounted to interrogation because, even if we were to agree with Appellant's characterization of the issue, Appellant would not be entitled to suppression of the statement proffered in response to the officer's request. We find the inevitable discovery rule applies. The inevitable discovery rule provides as follows:

> [I]f the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.

**Commonwealth v Bailey**, 986 A.2d 860, 862 (Pa. Super. 2009) (citation omitted). "Instantly, law enforcement would have obtained the information contained on the legally seized iPhone through forensic utilities, manufacturer or cell phone provider assistance." Trial Court Opinion, 7/10/16, at 5; **see also id.** at 3-4. Therefore, we agree with the trial court's denial of Appellant's motion to suppress.

Next, Appellant argues the trial court erred in not suppressing the evidence obtained from the second extraction of Appellant's cell phone. According to Appellant, the Commonwealth needed another warrant to access his cell phone for the second extraction. In support of his claim, Appellant principally relies on **Riley v. California**, 134 S.Ct. 2473 (2014) (for the proposition that the warrantless search of a cellular phone

conducted incident to an arrest is unconstitutional), and ***Commonwealth v. Stem***, 96 A.3d 407 (Pa. Super. 2014) (same).  We disagree.

After the Commonwealth obtained a proper search warrant, Detective Aston of the Pennsylvania State Police conducted a full extraction of Appellant's phone, and prepared a report.  On the eve of trial, the Commonwealth learned of Detective Aston's inability to testify.  The Commonwealth then asked Detective Paul of the Pennsylvania State Police to conduct the same full extraction of Appellant's cell phone.  The Commonwealth asked Appellant to stipulate to Detective Aston's report, but Appellant refused. At the hearing held on Appellee's motion to suppress the second report, the Commonwealth represented that the extraction report prepared by Detective Paul was substantially identical to the report prepared by Detective Aston.  N.T. Hearing, 11/24/15, at 7-9.  At the same hearing, Appellant noted that the second report provided data explanations, which the first one did not.  ***Id.*** at 9-10.  Appellant, however, could not tell whether there were any substantive differences between the two reports. ***Id.***  Eventually, Appellant stipulated to the admission and accuracy of the second extraction report.  Stipulation of Counsel, 11/30/15, at 1-2.

On appeal, Appellant again argues that the second extraction constituted a new search because it "could" potentially reveal new and/or different information from the first search.  On appeal, as at the hearing, Appellant fails to state if indeed there was any substantive difference

between the two reports.[2] Regardless of any deficiency in Appellant's argument, we need not address the merits of this contention because Appellant stipulated to the admission and accuracy of the second report, without any reservation. The claim was, therefore, abandoned below and cannot be raised on appeal. *See* Pa.R.A.P. 302(a).

Even if we were to conclude that the issue is preserved for our review, we would, nonetheless, conclude that it has no merit. It is uncontested that Appellant's cell phone was in the Commonwealth's custody and had been since it was seized under the first warrant. Additionally, the same reasons for the issuance of the first search warrant were present and would have justified the issuance of a second search warrant. Had a second warrant been obtained, the search would have inevitably resulted in the discovery of the same information contained in the second report. The second report, therefore, would have been admissible under the inevitable discovery rule. *See* Trial Court Opinion, 4/1/16, at 3.

---

[2] Appellant cites to Pa.R.Crim.P. 581(H) for the proposition that the Commonwealth has the burden of establishing by preponderance of evidence that the challenged evidence was not obtained in violation of his rights. Appellant, however, neglects to mention that the Commonwealth's burden is triggered by a motion to suppress stating "specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). Regardless of deficiencies, if any, in Appellant's motion to suppress, the legality of the second extraction issue is nonetheless waived as Appellant stipulated to the admission and accuracy of the challenged report.

Finally, Appellant argues the trial court abused its discretion in denying his motion to compel disclosure of the confidential informant and open charges against the same. We disagree.

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." *Commonwealth v. Washington*, 63 A.3d 797, 801 (Pa. Super. 2013).

Rule of Criminal Procedure 573 provides that a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:

> (a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
>
> > (i) the names and addresses of eyewitnesses.
>
> > . . . .

Pa.R.Crim.P. 573(B)(2)(a)(i).

> The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial

court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth.

In striking the proper balance, the court must consider the following principles:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.
>
> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Commonwealth v. Marsh*, 997 A.2d 318, 321-22 (Pa. 2010) (internal citations omitted) (alteration in original).

Here, Appellant argues that the identity of the informant should be disclosed so that he/she could be questioned about issues material to Appellant's defense; however, it is unclear to as what defense it would be material. Appellant argues that the informant could provide evidence that exculpates him given that the informant did not know Appellant, could not identify Appellant, and had no dealings with Appellant. Appellant's Brief at

24. Appellant, however, does not argue the informant misidentified him. Additionally, Appellant argues that the disclosure of the informant's identity is reasonable because the sole basis for the investigation that resulted in the search and seizure of Appellant's residence was information from the informant about Appellant's roommate's illegal activities. *Id.* at 25.

The trial court dismissed the claim, noting that

the charges against [Appellant] arose from the search of [Appellant]'s dwelling, not from the controlled buys that the confidential informant was part of. The only attenuated connection between the confidential informant and [Appellant] is that the search warrant that resulted in [Appellant]'s charges was based in part on information from the confidential informant regarding [Appellant]'s roommate and the confidential informant's controlled buys from [Appellant]'s roommate.

Trial Court Opinion, 9/1/15, at 3-4. We agree with the trial court's analysis and conclusion.

We also note that disclosure of the identity of the informant is relevant and material to a defendant "if it tends to show that a specific crime of which a defendant stands accused was committed by someone else. The record must disclose a reasonable possibility that the information sought will materially aid the defendant in presenting his defense and is not obtainable from another source." *Commonwealth v. King*, 932 A.2d 948, 953 (Pa. Super. 2007). As noted, Appellant does not allege or argue that someone else committed the crimes with which he has been charged. Similarly, Appellant does not argue, let alone demonstrate, that there is a reasonable

possibility the informant's testimony would exonerate him. **See Commonwealth v. Withrow**, 932 A.2d 138, 141 (Pa. Super. 2013).

Additionally, we note that the identity of the informant is immaterial to Appellant's trial because his charges arose from the execution of a search warrant, not a controlled purchase. The informant was not an eyewitness to the crimes with which Appellant is charged, and the informant was not present at the time of the search. **See**, **King**, 932 A.2d at 953.[3]

In light of the foregoing, we conclude that Appellant failed to demonstrate that testimony from the informant would tend to show that someone other than Appellant committed the offense at issue. **See id.** Moreover, Appellant failed to demonstrate that the informant's testimony would otherwise tend to exonerate him. **See Withrow**, 932 A.2d at 141. Therefore, the trial court properly denied Appellant's request for disclosure of the informant's identity.

---

[3] In **King**, we concluded that informant's identity should not be revealed where defendant's "charges arose from the execution of the search warrant, not from the controlled buy;" the informant "was not an eyewitness to the crimes charged, which arose strictly out of the execution of the search warrant inside the house;" informant was not present at the time of the search; and defendant did not challenge the validity of the search warrant. **King**, 932 A.2d at 953.

In light of the foregoing, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017